UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| CINDY B. HUNT, ) | Civil Action No.: 4:09-cv-2151-JMC-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **OPINION AND ORDER** |
| ) | |
| BRANCH BANKING & TRUST ) | |
| COMPANY, DANNY FOGLE, ) | |
| CATHY LAMBERT, JUDY TEAL, ) | |
| MARK BOOZ, KACI SANSBURY ) | |
| and DAVID CRAVEN, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**I.     INTRODUCTION**

In this action, Plaintiff, who is proceeding *pro se*[1], asserts claims arising out of her banking relationship with Defendant Branch Banking & Trust (BB&T). In her Second Amended Complaint, Plaintiff asserts causes of action for violation of privacy under S.C. Code Ann. § 37-30-110, et al, violation of 18 U.S.C. § 1005, violation of 18 U.S.C. § 1030, fraud, negligent misrepresentation, conversion, breach of fiduciary duty, violation of the South Carolina Probate Code, and violation of 12 U.S.C. § 1972. Presently before the Court is Defendants'[2] Motion to Dismiss (Document # 41) Plaintiff's Second Amended Complaint. Plaintiff filed her Response (Document # 53) on July 13,

---

[1] At the time the Second Amended Complaint was filed, Plaintiff was represented by counsel. However, counsel subsequently moved to be relieved, and her motion was granted.

[2] In this motion, "Defendants" shall refer to all Defendants except for David Craven, who has not made an appearance in this action. Plaintiff has filed a Motion for Default Judgment (Document # 68), which Defendants have opposed, arguing Plaintiff has failed to properly serve Craven. The Motion for Default Judgment will be addressed separately.

2010.[3]

## II.   FACTUAL ALLEGATIONS

In her Second Amended Complaint, Plaintiff alleges that in May of 2000, she opened a Payable on Death/Revocable Trust Account (POD) with Defendant BB&T[4], naming her cousin, Costella Hunt Davis (Davis), as beneficiary. Second Amended Complaint ¶ 8. She alleges that the POD account was opened improperly as a joint account with Plaintiff and Davis as co-owners of the account. *Id.* at ¶ 9. Plaintiff regularly deposited money into the POD account. *Id.* Plaintiff further alleges that her customer profile with BB&T contained incorrect information for years, including information related to other persons and loans and accounts held by other persons. *Id.* at ¶ 11.

On January 19, 2008, Davis visited a BB&T branch in Conway, South Carolina and inquired about her mortgage with the bank. *Id.* at ¶ 12. Defendant Kaci Sansbury (Sansbury), an employee of BB&T told her she had a certain amount of money in her account, which was actually the amount of money Plaintiff held in the POD account. *Id.* Sansbury also disclosed other information about the account to Davis. *Id.* Davis informed Plaintiff of the disclosure. *Id.* at ¶ 13.

On or around January 22, 2008, Plaintiff began telephoning Defendants and the legal department at BB&T, complaining of the disclosure to Davis. *Id.* at ¶ 14. Plaintiff alleges that Defendants were non-responsive and denied any wrongdoing. *Id.*

In April or May of 2008, Plaintiff cashed a check a BB&T that was later subjected to a stop

---

[3] Plaintiff first filed a Response (Document # 48) on June 2, 2010, and then filed an Amended Response (Document # 53) on July 13, 2010. The court will rely on Plaintiff's Amended Response.

[4] Plaintiff began her banking relationship with Coastal Federal Bank in 1993. *Id.* at ¶ 1. In August of 2007, Coastal Federal Bank merged with BB&T. *Id.* at ¶ 10. For ease of reference, the court will refer to the bank as BB&T.

payment by the issuing agency. *Id.* at ¶ 15. Claiming they had the right of set-off, BB&T withdrew the money for this check from Plaintiff's POD account without Plaintiff's permission. *Id.* Plaintiff demanded return of these monies, but the bank refused. *Id.* Plaintiff withdrew her accounts from BB&T. *Id.* at ¶ 16.

Plaintiff complained about the mishandling of her POD account to the Federal Deposit Insurance Corporation (FDIC). *Id.* at ¶ 17. Plaintiff alleges Defendants Sansbury, Mark Booz (Booz), Judy Teal (Teal) and David Craven (Craven) omitted or gave false information to the FDIC. *Id.*

## III.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(2)

When a defendant files a motion to dismiss the plaintiff's complaint for lack of personal jurisdiction under Rule 12(b)(2), "the burden is on the plaintiff to establish the existence of a ground for exercising such jurisdiction." *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 328 (D.S.C.1999). In the absence of an evidentiary hearing, the court may rely on the parties' pleadings, affidavits, and other legal documents, and the plaintiff need only make a *prima facie* showing of jurisdiction. *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989).

### B.    Federal Rule of Civil Procedure 12(b)(6)

For a complaint to survive a motion to dismiss for failure to state a claim, the Federal Rules of Civil Procedure require that it contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a) does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)), in order to "give the defendant fair notice ... of what the claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal citations omitted). Stated otherwise, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint alleging facts which are "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929) (internal quotation marks omitted).

In evaluating a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, is liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir.1996). The court may consider only the facts alleged in the complaint, which may include any documents either attached to or incorporated in the complaint, and matters of which the court may take judicial notice. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). Although the court must accept the plaintiff's factual allegations as true, any conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted to the extent that "they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct.

at 1950. A court may dismiss a complaint where "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

## IV.    DISCUSSION

### A.    Personal Jurisdiction Over Defendant Mark Booz

Defendants argue that this court lacks personal jurisdiction over Defendant Mark Booz, an in-house attorney with BB&T who works in Winston-Salem, North Carolina, because Booz has had no contacts with the state of South Carolina regarding the events giving rise to this litigation. Defendants present Booz's Affidavit in which he avers that on May 15, 2008, in the course of his employment with BB&T, he signed and sent a letter to Janet R. Kincaid with the Division of Supervision and Consumer Protection of the FDIC. Booz Aff. ¶ 3 (attached as an Exhibit to Defendants' First Motion to Dismiss (Document # 20)). He prepared the letter in Winston-Salem, North Carolina and it was transmitted to Kincaid in Kansas City, Missouri. *Id.* In the course of the preparation and transmittal of the letter, he had no contact with Plaintiff, her accounts, or any person located in the state of South Carolina. *Id.* The letter involved an analysis by members of the legal department of BB&T of the law related to factual matters raised by previous correspondence from Kincaid. *Id.* The May 15, 2008, letter addresses the "Complaint of Cindy B. Hunt" and references both a letter from Kincaid dated May 8, 2008, and a letter from Defendant Judy Teal to the FDIC dated April 11, 2008. Booz Letter Dated May 15, 2008 (attached as an Exhibit to Plaintiff's Response (Document # 53)). Booz avers that other than the May 15, 2008, correspondence to Kincaid, he has had no contact with Plaintiff or any account maintained by her with BB&T. Booz

Aff. ¶ 4.

Defendants argue that this letter, drafted in North Carolina to a recipient in Missouri, is insufficient to establish the requisite minimum contacts with South Carolina to confer personal jurisdiction in this court. Plaintiff argues that the facts that the letter involves an account in South Carolina and references a factual scenario that took place in South Carolina[5] are sufficient to establish minimum contacts with this state.

A court may exercise specific jurisdiction when "the out of state defendant engage[s] in some activity purposely aimed toward the forum state and ... the cause of action arise[s] directly from that activity." *ESAB Group, Inc. v. Centricut, LLC*, 34 F.Supp.2d 323, 331-32 (D.S.C.1999). A federal district court possesses specific personal jurisdiction over a non-resident defendant only "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (internal citations omitted). South Carolina's long arm statute provides,

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
> (1) transacting any business in this State;
> (2) contracting to supply services or things in the State;
> (3) commission of a tortious act in whole or in part in this State;
> (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
> (5) having an interest in, using, or possessing real property in this State;
> (6) contracting to insure any person, property, or risk located within this State at the time of contracting;

---

[5]The letter addresses the conversation between Davis and Sansbury during which Sansbury allegedly reveals to Davis the existence of the supposed POD account and the balance of the account. *See* Booz Letter.

> (7) entry into a contract to be performed in whole or in part by either party in this State; or
> (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.
>
> (B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

S.C. Code Ann. § 36-2-803. South Carolina has interpreted its long-arm statute to be co-extensive with the limits of federal due process, and the test for specific personal jurisdiction in South Carolina therefore focuses on due process alone. *Foster v. Arletty 3 S.A.R.L.*, 278 F.3d 409, 414 (4th Cir. 2002).

The Fourth Circuit has applied a three-part test when evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant "purposely availed" itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 476-77, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1988)).

The first two prongs of the due-process test articulate the "minimum contacts" requirement of constitutional due process. *Consulting Engineers*, 561 F.3d at 278. "The minimum contacts test requires the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Id.* at 277 (quoting *Burger King Corp*, 471 U.S. at 472 ). "[T]he defendant's conduct and connection with the

forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). This requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated contacts,' or of the 'unilateral activity of another party or a third person.'" *Tetrev v. Pride Intern., Inc.*, 465 F.Supp.2d 555, 559 (D.S.C.2006) (quoting *Burger King Corp.*, 471 U.S. at 472).

First, Plaintiff does not point to the subsection of South Carolina's long-arm statute under which her claims against Booz would fall. The only allegations in the Second Amended Complaint asserted against Booz are the causes of action for false entry in a bank statement in violation of 18 U.S.C. § 1005, computer fraud under 18 U.S.C. § 1030, and common law fraud. To the extent Plaintiff asserts that these claims fall under subsection (A)(3) of the long-arm statute, that is, commission of a tortious act in whole or in part in this State, the Second Amended Complaint fails to allege and Plaintiff fails to make a sufficient showing that Booz committed any acts in South Carolina. There are no allegations nor is there any evidence in the record that Booz ever communicated with anyone in South Carolina regarding Plaintiff's accounts or that he directed that any action take place in South Carolina with respect to Plaintiff's accounts. The only factual allegations specifically referring to Booz are that he resides in Winston-Salem, North Carolina and that he omitted or gave false information to the FDIC regarding the alleged mishandling of Plaintiff's POD account. Second Amended Complaint ¶ 17. Plaintiff has failed to allege or show that Booz purposely availed himself of the privileges of conducting activities in South Carolina because there is nothing in the pleadings or otherwise in the record to show that he conducted any activities in South Carolina. The fact that he referenced activities conducted by others in South Carolina in a

letter drafted and transmitted completely outside of this state is insufficient to show that he conducted activities in this state. Any contacts Booz may have with the state of South Carolina are too attenuated to allow this court to exercise personal jurisdiction over him. Thus, dismissal of Booz pursuant to Rule 12(b)(2) is appropriate.

### B.      Failure to State a Claim as to Specific Causes of Action

#### 1.      18 U.S.C. § 1005

In her second cause of action, Plaintiff asserts a claim under 18 U.S.C. § 1005, which is a federal criminal statute without a private right of action. *See, e.g., Hardie v. Grenier*, 84 Civ. 4710(CSH), 1987 WL 33600 at 1 n. 1 (S.D.N.Y. Dec. 23, 1987) (Haight, D.J.), *aff'd*, 849 F.2d 1467 (2d Cir.1988); *see also Dykes v. PCA Fed. Credit Union*, 1:09-MI-00579, 2010 WL 1529295 at *3 (N.D.Ga. Feb.4, 2010) (Report & Recommendation), *adopted at*, 2010 WL 1529293 (N.D.Ga. Apr.13, 2010); *Carter v. Carter*, 07-13772, 2008 WL 5662081 at *12 (E.D.Mich. July 22, 2008) (Report & Recommendation), *adopted at*, 2009 WL 440968 (E.D.Mich. Feb.23, 2009); *see also Daviditis v. Nat'l Bank of Mattoon*, 262 F.2d 884, 886 (7th Cir.1959). Although not alleged in her Second Amended Complaint, Plaintiff argues in her Response that she brings her claim pursuant to 12 U.S.C. § 503, which provides for civil liability of the federal reserve and member banks, shareholders and officers for violations of certain criminal statutes, including 18 U.S.C. § 1005. Nevertheless, even assuming Plaintiff asserted this cause of action under 12 U.S.C. § 503, Plaintiff's allegations still fail to state a cause of action. Section 1005 makes it a violation to "make[] any false entry in any book, report, or statement of such bank, company, branch, agency, or organization with intent to injure or defraud such bank, company, branch, agency, or organization or any other

company, body politic or corporate, or any individual person . . . ." 18 U.S.C. § 1005.[6] The conclusory allegation that "defendants made several false entries in bank statements, in her personal profile and in other places" is not supported by sufficient factual allegations to allow the court to draw a reasonable inference that Defendants are liable for the misconduct alleged. Further, Plaintiff's Second Amended Complaint contains no allegations that any of the Defendants made any type of false entry with the intent to injure or defraud Plaintiff. Plaintiff's conclusory statement that "these false entries were made intentionally" is insufficient to state a claim to relief that is plausible on its face. As noted above, a complaint alleging facts which are "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955, 167 L.Ed.2d 929) (internal quotation marks omitted). Accordingly, dismissal of Plaintiff's second cause of action is appropriate.

### 2.     18 U.S.C. § 1030

Plaintiff's third cause of action also falls under a federal criminal statute, the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. This statute specifically provides a private right of action. *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."). Nevertheless, Plaintiff's allegations are insufficient to state a claim under the CFAA. All of the violations listed under subsection (a) of § 1030 require either (1) intentionally or knowingly accessing a computer without authorization or exceeding authorization, (2) intentionally or knowingly damaging a protected computer without authorization,

---

[6]Section 1005 also addresses other violations which are clearly not relevant here.

(3) knowingly trafficking in any password or other information through which a computer may be accessed without authorization, or (4) intentionally extorting money or other thing of value. *See* 18 U.S.C. § 1030(a). The allegations in Plaintiff's Second Amended Complaint do not involve any of these types of violations. With respect to her claim under the CFAA, Plaintiff alleges,

> 29. Defendants committed computer fraud by setting up Plaintiff's Payable on Death account, and other accounts, in a manner not authorized by the Plaintiff. This was on Defendant's protected computer.
> 30. Defendant has made false statements to third parties, including Costella Hunt Davis, the FDIS, and to other third parties inconsistent with the wishes of Plaintiff or any authorization made by Plaintiff.
> 31. Defendants have disclosed private information about Plaintiff and her accounts to third parties without Plaintiff's authorization.
> 32. The fraud involved interstate commerce.

Second Amended Complaint ¶¶ 29-32. Plaintiff appears to allege that Defendants took action without or exceeding *her* authorization. However, this is not what is contemplated by the statute. Plaintiff's allegations fail to state a claim upon which relief can be granted under 18 U.S.C. § 1030. Accordingly, Plaintiff's third cause of action is dismissed.

### 3.     12 U.S.C. § 1972

Plaintiff's final cause of action is for violation of the antitying provisions of the Bank Holding Company Act, 12 U.S.C. § 1972 *et seq.* Plaintiff alleges her POD account was illegally tied to other accounts, including Costella Hunt Davis' mortgage and loan accounts to other individuals. Second Amended Complaint ¶ 64. She further alleges that this "unusual" banking practice benefitted Defendant BB&T by bringing extra business to the bank, such as loans and mortgages. *Id.* at ¶ 65.

Section 1972(1) sets forth the types of tying arrangements that are prohibited:

> (1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on

>    the condition or requirement--
>       (A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;
>       (B) that the customer shall obtain some additional credit, property, or service from a bank holding company of such bank, or from any other subsidiary of such bank holding company;
>       (C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;
>       (D) that the customer provide some additional credit, property, or service to a bank holding company of such bank, or to any other subsidiary of such bank holding company; or
>       (E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.
>    The Board may by regulation or order permit such exceptions to the foregoing prohibition and the prohibitions of section 1843(f)(9) and 1843(h)(2) of this title as it considers will not be contrary to the purposes of this chapter.

12 U.S.C. § 1972(1). Plaintiff's conclusory allegations that her POD account was "tied illegally" to other accounts is insufficient to allege cause of action under this section. There are no allegations in the Second Amended Complaint that Defendant BB&T required any customer to obtain or provide any type of additional credit, property or service for that customer to acquire some sort of credit, property or service from the bank. Plaintiff's Second Amended Complaint does not contain sufficient factual matter to state a claim under 12 U.S.C. § 1972 that is plausible on its face. Therefore, Plaintiff's ninth cause of action is subject to dismissal.

### 4.     Supplemental Jurisdiction

As discussed, the court finds that dismissal is appropriate on Plaintiff's claims against Defendant Mark Booz and her claims under 18 U.S.C. § 1005, 18 U.S.C. § 1030 and 12 U.S.C. § 1972. Included in those causes of action subject to dismissal are all of those over which this court

had original jurisdiction, that is, those causes of action arising under federal law.[7] The only claims remaining in this action are Plaintiff's state law claims. Title 28 U.S.C. § 1367(c)(3) provides, in pertinent part, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...." The Fourth Circuit has recognized that "trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995) (holding district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). *See also, e.g., United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Revene v. Charles County Comm'rs*, 882 F.2d 870, 875 (4th Cir.1989). Accordingly, the court declines to retain jurisdiction over Plaintiff's remaining state law claims.

## V.     CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Document # 41) is **GRANTED** in part and **DENIED** in part. Specifically, Plaintiff's claims against Defendant Mark Booz are dismissed under Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction and Plaintiff's second, third, and ninth causes of action are dismissed under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. The court declines to retain jurisdiction over Plaintiff's remaining state law causes of action, and, thus, this case is **DISMISSED** in its entirety. All other pending motions are moot.[8]

---

[7] No diversity of jurisdiction exists as Plaintiff and several Defendants are residents of South Carolina.

[8] Plaintiff recently filed a Motion to Amend (Document # 105) her Second Amended Complaint. However, the Motion was filed outside the deadline for amending pleadings set forth in the Scheduling Order (Document # 66) and Plaintiff has failed to establish good cause for

**IT IS SO ORDERED.**

                                                  s/J. Michelle Childs  
                                                  J. Michelle Childs  
                                                  United States District Judge

March 23, 2011  
Greenville, South Carolina

---

failing to timely file the Motion. Thus, even if the court were to address the Motion to Amend, it would be dismissed as untimely.

-14-